**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUSTIN T. ASHLEY | : | Civil No. 1:22-CV-00982 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ADAM R. KOSEHBA, JR., *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are motions to dismiss and strike the amended complaint filed by Defendants.  (Docs. 22, 23.)  This case involves allegations of Lower Paxton Police Department officers using excessive force against Plaintiff, Justin T. Ashley ("Ashley").  Ashley specifically brings his claims under 42 U.S.C. § 1983, alleging Fourth Amendment violations for use of excessive force against Defendant Chad W. Miller ("Miller"), failure to intervene against Defendants Adam R. Kosheba, Jr. ("Kosehba"), Daniel M. Smeck ("Smeck"), and Andrew R. Brady ("Brady"), supervisor liability against Kosheba, Miller, and Brady, municipal liability against Defendant Lower Paxton Township ("the Township") due to a policy of encouraging the use of excessive force against citizens, and municipal liability against Defendant Dauphin County ("County") for failing to supervise Kosheba.

The Township's motion to dismiss argues count IV alleging *Monell* liability against the Township should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 22.)  The Township's motion to strike pursuant to Federal Rule of Civil Procedure 12(f) argues that certain factual assertions regarding the culture of the Lower Paxton Township Police Department in the amended complaint are impertinent or scandalous.  (*Id.*)  The County's motion to dismiss argues count V alleging *Monell* claims against the County should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 23.)

The court finds that Ashley has alleged sufficient facts to proceed on his *Monell* claim against the Township.  The court also finds that the content of the facts contained in subparagraph E of the amended complaint is immaterial and will be stricken.  However, the remaining challenged subparagraphs are material and will not be stricken.  Finally, the court finds that Ashley has not alleged sufficient facts to proceed on his failure to supervise claim against the County.  For the reasons that follow, the Township's motion to dismiss is denied, the Township's motion to strike is denied in part and granted in part, and the County's motion is granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Ashley initiated this action by filing a complaint on June 21, 2022. (Doc. 1.) Thereafter, both the Township and County filed a motion to dismiss for failure to state a claim. (Docs. 9, 12.) Ashley filed an amended complaint as matter of course on September 29, 2022, alleging the following claims: excessive force against Miller (count 1), duty to intervene against Kosheba, Smeck, and Brady (count 2), supervisor liability against Kosheba, Miller, and Brady (count 3), *Monell* liability against the Township (count 4), and *Monell* liability against the County (count 5). (Doc. 18.)

The amended complaint alleges the following facts. Kosheba was named the Township's Director of Public safety on April 17, 2018. (Doc. 17, ¶ 17.)[1] Because of his position as Director of Public Safety, Kosheba was a Township policymaker. (*Id.* ¶ 21.) During his time as Director of Public Safety, Kosheba allegedly sought to "police the community pursuant to a policy of excessive force and intimidation." (*Id.* ¶ 25.) Kosheba allegedly changed the reporting requirements of use of force incidents in order for it to appear that injuries only occurred in a small fraction of situations, and he also changed the vehicle pursuit policy, which led to an increased number of vehicle pursuits in the Township. (*Id.* ¶¶ 30, 33.)

Ashley alleges that Kosheba created an atmosphere in the Township police department that encouraged excessive force by hanging a gladiator mask in the

_____

[1] For ease of reference, the court utilizes page numbers from the CM/ECF header.

department and having new hires take a picture with it, designing a t-shirt to be worn at a community event that depicted a skull with guns, and allowing a "use of force training officer" to hang a cartoon vigilante character's mask in his office. (*Id.* ¶ 34–39.)

According to Ashley, the Township had knowledge of the policy of excessive force because an officer in the police department posted a TikTok video in full Township police uniform in which the officer was standing in front of a black flag and the video contained the hashtag "sheepdog." (*Id.* ¶¶ 41, 44.) This hashtag apparently references a philosophy that "police officers are sheepdogs who must use violence to protect the flock (the citizens)." (*Id.* ¶ 46.)

Ashley further alleges that Kosheba created a Community Engagement Team ("CET"), which had the official mission of providing "the residents of Lower Paxton Township the best possible police services through aggressive enforcements of the Laws and Statutes of the Commonwealth of Pennsylvania[.]" (*Id.* ¶ 57 (emphasis removed).)

Finally, Ashley alleges that Kosheba, Miller, Brady, and Smeck served an arrest warrant at his home on June 24, 2020. (*Id.* ¶ 69.) All Defendants involved in this incident knew that Ashley had been suffering from mental illness and was working with a mental health case worker at the time. (*Id.* ¶ 71.) The named Defendants and the CET surrounded Ashley's home with law enforcement

4

vehicles, armed officers, and a police K-9. (*Id.* ¶ 75.)  The officers pounded on Ashley's door, threatening to break the door the down and threatening to send the K-9 they had with them into the home. (*Id.* ¶¶ 76, 77.)  As Ashley was heading for the door, he heard it being broken down and hid in a closet behind a desk so that the K-9 would not bite him. (*Id.* ¶ 82.)  The officers warned Ashley that if he did not exit the closet, the K-9 would be sent to bite him. (*Id.* ¶ 83.)

Kosheba, Brady, and Smeck found Ashley in the storage closet and commanded him to show his hands. (*Id.* ¶ 87.)  Ashley complied, but then froze when he saw the K-9. (*Id.* ¶¶ 90, 93.)  Miller then commanded the K-9 to bite Ashley, causing him to suffer injuries on his arm. (*Id.* ¶¶ 94, 98.)  Kosheba, Miller, Brady, and Smeck then attempted to pull Ashley over the desk he was hiding behind by the hood of his sweatshirt, causing injury to Ashley's neck. (*Id.* ¶ 100.)  Ashley then proceeded to lay in the fetal position on the floor, during which Miller instructed the K-9 to bite Ashley's leg. (*Id.* ¶¶ 102, 104.)  The K-9 was permitted to chew Ashley's leg, causing significant injuries. (*Id.* ¶¶ 107, 108.)

On October 13, 2022, the Township and County filed motions to dismiss for failure to state a claim. (Docs. 22, 23.)  The Township's motion to dismiss also contains a motion to strike. (Doc. 22.)  The County filed its brief in support of its motion on October 13, 2022. (Doc. 24.)  The Township filed its brief in support on October 26, 2022. (Doc. 27.)  The court granted Ashley's request to stay his

briefing deadlines due to ongoing negotiations and a scheduled mediation on November 8, 2022, and November 21, 2022, respectively.  (Docs. 31, 35.)  After mediation discussions ended, the court reset the deadlines in the case management deadlines.  (Doc. 41.)  Ashley filed his brief in opposition to both motions on May 19, 2023.  (Docs. 42, 43.)  The County filed its reply brief on May 31, 2023.  (Doc. 44.)  The Township filed its reply brief on June 1, 2023.  (Doc. 45.)  The motions are now fully briefed and ripe for review.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Ashley brings claims alleging violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.  Venue is appropriate pursuant to 28 U.S. § 1381 because all parties are located within the Middle District of Pennsylvania and all events alleged in the complaint occurred within the Middle District of Pennsylvania.

## STANDARDS OF REVIEW

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### B. Motion to Strike Under Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), a party can move a district court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." This rule is "designed to reinforce the requirement in Rule 8 . . . that pleadings be simple, concise, and direct." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2020 update). To that end, the purpose of any motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into

immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted).

Motions to strike should not be used to persuade a court to determine disputed questions of law. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993) (citations omitted). They also "may not serve as an avenue to procure the dismissal of all or part of a complaint." *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612, 624 (W.D. Pa. Oct. 21, 2013), *vacated in part on reconsideration*, 2014 U.S. Dist. LEXIS 102143 (W.D. Pa. July 28, 2014) (citing *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 530–31 (D.N.J. 2012)).

The burden rests with the moving party to show that the challenged matter should be stricken. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language,

or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

## DISCUSSION

Turning first to the Township's motion to dismiss, the Township argues that Ashley's *Monell* claim should be dismissed because Ashley has failed to allege facts showing an official policy or custom of the Lower Paxton Police Department which was the moving force behind the constitutional violation.  (Doc. 22, p. 5.) The Township also argues in its motion to strike that certain facts included in the amended complaint about the culture of the Lower Paxton Police Department should be stricken because Ashley has not set forth a sufficient factual basis regarding Township policy and, therefore, facts about the Police Department culture are immaterial.  (*Id.* at 11.)  Similarly, the County argues that Ashley's *Monell* claims against it should be dismissed because Ashley does not allege sufficient facts showing a policy or custom of the county which caused his injury, and also does not allege sufficient facts showing the County failed to supervise Kosehba.  (Doc. 23.)  The court will address each of the Township's arguments successively then turn to the County's motion to dismiss.

### A. The Township's Motion to Dismiss the *Monell* Claim will be Denied.

The Township argues that Ashley's *Monell* claim should be dismissed under Rule 12(b)(6) because Ashley fails to allege sufficient facts showing that a policy

or custom of the Township caused the deprivation of his constitutional rights. (Doc. 2, p. 5.)  Ashley responds that Kosheba's personal participation in the alleged violation constitutes the policy of the Township because Kosheba is a policymaker.  (Doc. 42, p. 4.)

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

A policy or custom can be proven in multiple ways.  First, a plaintiff may point to "a formal policy officially promulgated or endorsed by the municipality . . . ."  *Id.* at 351.  The policy must be "an official proclamation, policy or edict" made by "a decisionmaker possessing final authority to establish municipal policy with respect to the action . . . ."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d. Cir. 2019).

10

Second, absent a formal policy, a "specific injury-causing action[] taken by a government official who is responsible for establishing municipal polices" may establish a municipal policy or custom. *Schlaybach*, 434 F. Supp. 3d at 351.  In this scenario, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997).

Third, absent a formal policy, the plaintiff may allege a municipality's custom, which is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a policymaker must have been aware[,]" caused the violation of their rights.  *Id.* (*see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990)).  The custom must be "so well-settled and permanent as virtually to constitute law."  *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

Finally, absent a formal policy, "a widespread failure by policymakers to provide adequate training or supervision to subordinates" which amounts to deliberate indifference towards the rights of citizens can also support municipal liability.  *Id.*  (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003).  In any

11

of the above scenarios, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850.

In the case at bar, Ashley has sufficiently alleged facts that Kosheba, an alleged Township policymaker, participated in a violation of his constitutional rights. (Doc. 18, p. 27.)  We note that the Township, at this procedural juncture, has not disputed Kosheba's status as a policymaker.  Ashley has alleged sufficient facts of Kosheba's policymaking authority in the Township via his position as Director of Public Safety, including facts regarding Kosheba making policy in various areas, including vehicle pursuits.  (*Id.* at 5, 7, 27.)

In *Pembaur v. City of Cincinnati*, the Supreme Court concluded that the single act of the county prosecutor directing sheriffs to enter petitioner's clinic in violation of his constitutional rights subjected the county to liability because the decision to deprive the petitioner of his constitutional rights was "a deliberate choice to follow a course of action…by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S 469, 483 (1986).  Further, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

Similarly, here, Ashley has alleged that the team of officers that deprived him of his constitutional right through use of excessive force was led by Kosehba, a Township policymaker, and Kosehba physically used excessive force on him at some point as well.  Ashley has also alleged that Kosheba set policy for the police department.  At the pleading stage, prior to discovery, this is sufficient to survive a motion to dismiss.

### B.  The Township's Motion to Strike will be Granted in Part and Denied in Part.

The Township argues in its motion to strike that the facts included in subparagraphs C, D, and E, as well all references to "culture," "policy," or "custom" in the amended complaint should be stricken from the complaint because these facts are immaterial without a *Monell* liability claim.  (Doc. 22, pp. 11, 12.) In the Township's brief, it also argues that subsections A, B, and G in the amended complaint should be stricken.  (Doc. 27, p. 15.)  Because Ashley had the opportunity to respond to the arguments regarding subsections A through E and G, we will address all six subparagraphs.

As noted above, the burden rests with the moving party to show that the challenged matter should be stricken.  *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019).  Thus, the Township must demonstrate that the matter falls within one of the categories listed in Rule 12(f).

The court will deny the motion to strike all references to "culture," "policy," or "custom" because the *Monell* claim is not dismissed. "Policy" and "custom" are key components of a *Monell* claim and are material to the claims alleged. References to the "culture" of the police department may be necessary for proving Ashley's *Monell* claim, as "culture" can be closely related to a "custom." The motion as to these specific words will be denied.

As to specific subparagraphs, subparagraph A contains facts regarding the opening of the Director of Public Safety position, which is the position that allegedly makes Kosheba a township policymaker. (Doc. 18, p. 4.) These facts are material to Ashley's *Monell* claim, which relies on proving the involvement of a policymaker. Subparagraph B contains facts relating to Kosehba's position as Director of Public Safety and his employment with Dauphin County. (*Id.* at 5–6.) Similar to subparagraph A, these facts are material to Ashley's *Monell* claims because they purport to establish Kosheba's authority within the Township and the County. Similarly, subparagraph C contains facts regarding actions Kosehba took once installed as the Director of Public Safety, including revising policies and the Township's response to these changes. (*Id.* at 6–10.) Again, these facts are material to Plaintiff's *Monell* claim and Kosheba's position as a policymaker. Thus, the motion will be denied as to subparagraphs A, B, and C.

Next, subparagraph D contains facts regarding Kosehba's alleged "warrior mentality" and the general atmosphere he allegedly fostered within the police department.  (*Id.* at 10–11.)  Specifically, Ashley notes that Kosheba hung a gladiator mask in the police department, designed a t-shirt featuring a skull with guns that some officers refused to wear, and allowed an officer to hang a mask of a fictional vigilante character in the office.  (*Id.* ¶¶ 35, 37, 39, 40.)  Similar to our conclusion on the word "culture," these facts may be material to a *Monell* claim based on a custom or practice within the police department.  Because Ashley's *Monell* claim survived the Township's motion to dismiss, the motion to strike will be denied as to subparagraph D.

Subparagraph E contains two sets of allegations.  First, paragraphs 41 through 43 contain allegations regarding the Township solicitor's, manager's and private counsel's knowledge of Kosheba and his alleged policies.  Second, paragraphs 44 through 48 reference a TikTok video made by a Township police officer in uniform standing in front of a black flag with the hashtag "sheepdog." (*Id.* ¶¶ 45, 46.)  Ashley contends that a black flag symbolizes anarchy and the hashtag "sheepdog" references a philosophy in which "police officers are sheepdogs who must use violence to protect the flock (the citizens)."  (*Id.* ¶ 47.) Ashley attempts to connect these paragraphs by stating that the Township had

awareness of this video, yet did nothing, and therefore, the Township knew of the "policy of excessive force" allegedly encouraged by Kosehba. (*Id.* ¶¶ 43, 44.)

The facts alleged at paragraphs 41 through 43 averring the Township leaders' knowledge of Kosheba's practices are material to Ashley's *Monell* claims, as actions and knowledge of municipal policymakers are often elements of a *Monell* claim. However, paragraphs 44 through 48 alleging actions of a Township police officer who is not a part of Kosheba's Community Engagement Team and whose actions are not the source of the alleged constitutional violation are immaterial. Accordingly, the motion to strike will be granted, but only as to subheading E ("E. The Township's 'Sheepdog'") on page 11, paragraphs 44 through 48 on page 12, and paragraph 141(j) on page 29.

Finally, subparagraph G contains facts regarding the Community Engagement Team that is alleged to have participated in the incident which injured Ashley. (*Id.* at 14.) This team, led by Kosheba, is material to Ashley's *Monell* claim because the officers who participated in the events at Ashley's home are members of this team, and the team is led by Kosheba. Thus, the motion to strike will be denied as to subparagraph G.

### C.  The County's Motion to Dismiss the *Monell* Claim will be Granted.

The County argues that Ashley's *Monell* claim against the County should be dismissed because it fails to allege sufficient facts regarding a policy or custom of

the County that caused Ashley's constitutional injury.  (Doc. 24, p. 6.)  The County

also argues that Ashley does not allege sufficient facts to show that the County

failed to supervise Kosheba.  (*Id.*)

      As noted above, a *Monell* claim can be based on several theories, including

either a policy or custom of the municipality that caused the constitutional injury or

the municipality's failure to supervise its employee resulting in deliberate

indifference towards the rights of its citizens.  *See Forrest v. Parry*, 930 F.3d 93,

105–06 (3d Cir. 2019).  Under an "unconstitutional policy" theory, a plaintiff must

allege "an official proclamation, policy or edict by a decisionmaker possessing

final authority to establish municipal policy on the relevant subject."  *Id.* at 105.

Under a failure to supervise theory, a plaintiff must show "(1) municipal

policymakers know that employees will confront a particular situation, (2) the

situation involves a difficult choice or a history of employees mishandling, and (3)

the wrong choice by an employee will frequently cause deprivation of

constitutional rights."  *Id.* at 106.

      With respect to the County, Ashley has failed to allege facts that Kosehba

was a policymaker in the County.  In order to be a policymaker of a municipality,

the policymaker in question must possess the authority to make final policy.  *City*

*of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Further, "[a]uthority to make

municipal policy may be granted directly by a legislative enactment or may be delegated to an official who possess such authority . . . ." *Id.* at 124.

Paragraph 147 of the amended complaint states "Defendant County swore Kosheba in as a law enforcement officer, certified him through MPOETC, provided him with the rank of Special Detective, and provided Kosheba with Countywide police authority." (Doc. 18, ¶ 147.) This paragraph only alleges that Kosheba had "countywide police authority," not that he had authority to make final policy throughout the County. Thus, Ashley has failed to allege liability of the County because he has not alleged that Kosehba is a county policymaker.

Furthermore, Ashley has failed to allege that the County did not properly supervise Kosheba. Ashley provides no facts showing the knowledge of any County policymakers as to the situations its police officers would face, any history of employees mishandling these situations, or that the wrong choice will be highly likely to deprive citizens of their rights. *See Forrest*, 930 F.3d at 106. Ashley only alleges that the County failed to supervise Kosehba. (Doc. 18, ¶ 148.) This conclusory statement is not sufficient to support the County being liable for Ashley's alleged constitutional deprivation. Therefore, Ashley has also failed to allege *Monell* liability under a failure to supervise theory.

Finally, the County asks the court to dismiss the count against it with prejudice and dismiss the County from the case. (Doc. 24, p. 13.) Federal Rule of

Civil Procedure 15(a)(2) provides "[t]he court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). The Supreme Court has held that amendment should be freely given, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, in civil rights cases, "courts must offer amendment irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

Ashley has alleged facts regarding Kosheba's employment by the County and rank of special detective. (Doc. 18, ¶¶ 15–22.) Accordingly, it would not be futile to allow Ashley to file a second amended complaint in order to show any policymaking authority Kosehba may have had in Dauphin County. Accordingly, the County's motion to dismiss will be granted without prejudice.

## CONCLUSION

For the foregoing reasons, the Township's motion to dismiss for failure to state a claim will be denied and the motion to strike will be granted in part and denied in part.  (Doc. 22.)  The County's motion to dismiss will be granted without prejudice.  (Doc. 23.)  An appropriate order follows.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:   September 22, 2023