## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN T. ASHLEY, | : | Civil No. 1:22-CV-00982 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ADAM R. KOSHEBA, JR., *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion filed by Defendant Dauphin County (the "County") to dismiss Count V of the second amended complaint filed by Plaintiff Justin T. Ashley ("Ashley"). (Doc. 51.) This case involves allegations of Lower Paxton Police Department officers using excessive force against Ashley. Ashley brings his claims under 42 U.S.C. § 1983, alleging various constitutional violations against Defendants Officer Chad W. Miller ("Officer Miller"), Officer Adam R. Kosheba, Jr. ("Officer Kosehba"), Officer Daniel M. Smeck ("Officer Smeck"), Officer Andrew R. Brady ("Officer Brady"), Lower Paxton Township ("the Township"), and the County.

The County's motion to dismiss argues that Count V, alleging *Monell* liability against the County, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 51.) Upon reviewing the second amended complaint and the parties' briefs

regarding the County's motion to dismiss, the court concludes that Ashley again fails to plead a claim against the County and will therefore grant the motion to dismiss.

## BACKGROUND

Ashley initiated this action by filing a complaint on June 21, 2022. (Doc. 1.) Thereafter, both the Township and County filed a motion to dismiss for failure to state a claim. (Docs. 9, 12.) Ashley then filed an amended complaint as matter of right on September 29, 2022, alleging the following claims: excessive force against Officer Miller (Count I), duty to intervene against Officers Kosheba, Smeck, and Brady (Count II), supervisor liability against Officers Kosheba, Miller, and Brady (Count III), *Monell* liability against the Township (Count IV), and *Monell* liability against the County (Count V). (Doc. 18.)

The Township and County filed motions to dismiss the amended complaint. (Docs. 22, 23.) On September 22, 2023, the court denied the Township's motion insofar as it sought to dismiss the complaint, but granted it in part insofar as it sought to strike portions of the complaint. (Doc. 48.) In the same order, the court granted the County's motion to dismiss without prejudice to Ashley filing a second amended complaint. (*Id.*) On October 13, 2023, Ashley filed a second amended complaint raising the same claims against the same Defendants. (Doc. 50.)

On October 27, 2023, the County filed the instant motion to dismiss.  (Doc. 51.)  The parties briefed the motion.  (Docs. 53, 55, 56.)  Thus, the motion is ripe for review.  On March 4, 2024, following a status conference with the parties, the court stayed case management deadlines pending resolution of the motion to dismiss.  (Doc. 61.)

The second amended complaint alleges the following facts.  Francis Chardo ("Chardo") became the elected District Attorney ("DA") for the County in January 2018.  (Doc. 50, ¶ 20.)  As DA, Chardo was a policymaker for the County DA's office.  (*Id.* ¶ 21.)  DA Chardo's policymaking role extended to the Criminal Investigation Division ("CID").  (*Id.* ¶¶ 22–23.)  DA Chardo authorized Officer Kosheba to be sworn in as a law enforcement officer under DA Chardo's supervision, gave Officer Kosheba the title of "Special Detective," and assigned him to the CID.[1]  (*Id.* ¶¶ 24–25.)  Under the portion of Pennsylvania statute called the County Code (the "Code"), county detectives "shall be general police officers and shall have the powers conferred on constables by the laws of this Commonwealth."  16 Pa. Stat. § 1440(d).

---

[1] Kosheba also acted as the Township's Director of Public Safety.  (Doc. 51, ¶¶ 16–17, 27.)  But because the instant motion concerns only his role with the County, the court omits allegations related to the Township and other Defendants except insofar as they are relevant to the County's motion.

Officer Kosheba was named the Township's Director of Public safety on April 17, 2018. (*Id.* ¶ 17.)  The Township delegated policymaking authority to Officer Kosheba for the Lower Paxton Township Police Department.  (*Id.* ¶ 19.) The second amended complaint alleges that Officer Kosheba took all relevant conduct mentioned herein in his dual roles as Township's Director of Public Safety and as a Special Detective for the County.  (*Id.* ¶ 27.)

During his time as Director of Public Safety, Officer Kosheba allegedly sought to "police the community pursuant to a policy of excessive force and intimidation." (*Id.* ¶ 31.)  Officer Kosheba allegedly changed the reporting requirements of use of force incidents in order for it to appear that injuries only occurred in a small fraction of situations, and he also changed the vehicle pursuit policy, which led to an increased number of vehicle pursuits in the Township.  (*Id.* ¶¶ 31, 36–37.)

Ashley alleges that DA Chardo provided Officer Kosheba with countywide police authority.  (*Id.* 152.)  DA Chardo provided Officer Kosheba with no supervision "despite knowing that [Officer] Kosheba was a County policymaker in charge of the [Community Engagement Team "CET"] and was traveling around the County using the CET [] to engage in police use of force incidents."  (*Id.* ¶¶ 58, 153.)  The CET was a team with the mission "to provide the residents of Lower Paxton Township the best possible police services through aggressive

enforcements of the Laws and Statutes of the Commonwealth of Pennsylvania."
(*Id.* ¶ 59 (emphasis removed).)

Finally, Ashley alleges that Officers Kosheba, Miller, Brady, and Smeck
served an arrest warrant at his home on June 24, 2020. (*Id.* ¶ 65.) All Defendants
involved in this incident knew that Ashley had been suffering from mental illness
and was working with a mental health case worker at the time. (*Id.* ¶ 73.) The
named Defendants and the CET surrounded Ashley's home with law enforcement
vehicles, armed officers, and a police K-9. (*Id.* ¶ 78.) The officers pounded on
Ashley's door, threatening to break the door the down and threatening to send the
K-9 into the home. (*Id.* ¶¶ 79, 81.) As Ashley was heading for the door, he heard
it being broken down and hid in a closet behind a desk so that the K-9 would not
bite him. (*Id.* ¶¶ 80–82, 84–85.) The officers warned Ashley that if he did come
out, the K-9 would be sent in to bite him. (*Id.* ¶ 87.)

Officers Kosheba, Brady, and Smeck found Ashley in the storage closet and
commanded him to show his hands. (*Id.* ¶¶ 89–91.) Ashley complied, but then
froze when he saw the K-9. (*Id.* ¶¶ 92–96.) Officer Miller then commanded the K-
9 to bite Ashley, causing him to suffer injuries on his arm. (*Id.* ¶¶ 97, 100–01.)
Officers Kosheba, Miller, Brady, and Smeck then attempted to pull Ashley over
the desk he was hiding behind by the hood of his sweatshirt, causing injury to
Ashley's neck. (*Id.* ¶ 102.) Ashley then proceeded to lie in the fetal position on

the floor, during which Officer Miller instructed the K-9 to bite Ashley's leg. (*Id.* ¶¶ 105–07.) The K-9 was permitted to chew Ashley's leg, causing significant injuries. (*Id.* ¶¶ 108, 110–11.) This encounter forms the basis of Ashley's lawsuit.

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

The County argues that Count V fails for two reasons.  First, Officer

Kosheba lacked final policymaking authority.  (Doc. 53, pp. 10–12.)[2]  Therefore,

his actions did not represent official County policy.  (*Id.*)  Second, Officer

Kosheba's actions cannot be otherwise attributed to the County through a failure to

supervise theory.  (*Id.* at 12–14.)  Ashley counters that the County is wrong on

both arguments and that he has sufficiently pleaded Count V.

Under Supreme Court precedent, a municipality can be liable for

constitutional violations committed by its employees only when "the action that is

alleged to be unconstitutional implements or executes a policy, statement,

ordinance, regulation, or decision officially adopted and promulgated by that

body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

690 (1978).  To bring a so-called *Monell* claim, a plaintiff must "plead that the

complained-of injury was caused directly by a local government's 'policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy.'"  *Schlaybach v. Berks Heim Nursing & Rehab*,

434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*,

171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

A policy or custom can be proven in multiple ways.  First, a plaintiff may point to "a formal policy officially promulgated or endorsed by the municipality . . . ."  *Id.* at 351.  The policy must be "an official proclamation, policy or edict" made by "a decisionmaker possessing final authority to establish municipal policy with respect to the action . . . ." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d. Cir. 2019).

Second, absent a formal policy, a "specific injury-causing action[] taken by a government official who is responsible for establishing municipal polices" may establish a municipal policy or custom.  *Schlaybach*, 434 F. Supp. 3d at 351. In this scenario, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997).

Third, absent a formal policy, the plaintiff may allege a municipality's custom, which is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a policymaker must have been aware[,]" caused the violation of their rights.  *Id.* (*see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990)).  The custom must be "so well-settled

and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

Finally, absent a formal policy, "a widespread failure by policymakers to provide adequate training or supervision to subordinates" which amounts to deliberate indifference towards the rights of citizens can also support municipal liability. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003). In any of the above scenarios, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850.

Establishing that a municipality was deliberately indifferent requires showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (citation omitted).

The arguments of Ashley and the County relate to the second and fourth bases for a *Monell* claim: actions by policymakers and deliberate indifference. The court will take them in turn.

## A. Ashley has not established that Kosheba had final policymaking authority.

There are two steps to determining whether an official has "final policy-making authority[] and can thus bind the municipality by his conduct." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).  First, a court must determine whether, "as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question." *Id.* (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 (1997).  Second, the court must determine "whether the official's authority to make policy in that area is *final and unreviewable*." *Id.*  (emphasis in original) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)).

The County argues that, under state and local law, Officer Kosheba was not a policymaker.  (Doc. 53, pp. 11–12.)  It points out that "the identification of those officials whose decisions represent the official policy of a local government unit is . . . a legal question to be resolved by the trial judge *before* the case is submitted to a jury."  (*Id.* at 11 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original)).)

The County points out that, under state law, although a DA may appoint a special detective with court approval, doing so provides that special detective with no policymaking powers.  (*Id.*)  Rather, the Code states the following:

The district attorney of any county may, with the approval of the salary board, whenever the court of common pleas and district attorney may deem it necessary for a particular and temporary assignment, appoint a special detective, whose duty it shall be to assist in obtaining such evidence as shall be directed by the district attorney for the Commonwealth, and perform such other duties as the court may direct. The special detective shall be allowed expenses necessarily and actually incurred in the performance of duties.

The special detective officer shall be a general police officer and shall have all the powers that are conferred on constables by the existing laws of this Commonwealth, so far as they relate to crimes or criminal procedure.

§ 1441. Therefore, as is true for all County detectives, special detectives are "at all times, [] subject to the orders of the district attorney." § 1440(c). The County argues that the Code makes clear that Officer Kosheba is not a final policymaker, because at all times he was subordinate to Chardo and subject to DA Chardo's orders. (Doc. 53, pp. 11–12.) Therefore, even if he could make policy, it would not be final and unreviewable.

Ashley does not dispute the law. Instead, he argues that the facts he has alleged show that Kosheba was a final policymaker. (Doc. 55, pp. 3–6.) Specifically, Ashley alleges in the second amended complaint that "Kosheba was a decisionmaker possessing final authority to establish policy with respect to the operation of the Township and County's CET." (Doc. 5, p. 5 (cleaned up).)

Ashley does not explain how this legal conclusion in his second amended complaint can overcome the plain language of the Code. The Code makes clear

that Officer Kosheba was at all times subject to the orders of DA Chardo. As such, even if Officer Kosheba was responsible for making County policy in some manner, his policy decisions were never final and unreviewable. They would be subject to review by DA Chardo. Because Officer Kosheba's decisions were at all times reviewable, Ashley cannot pursue *Monell* liability against the County on the basis that Officer Kosheba was a final policymaker.

### B. Ashley has not adequately pleaded a failure to supervise theory.

The County argues that Ashley's *Monell* claim also fails under a deliberate indifference theory because Ashley has failed to plead that the "failure alleged has caused a pattern of violations." (Doc. 53, p. 12 (quoting *Small v. Lower Paxton Twp.*, No. 1:22-cv-01146, 2023 WL 4631575, at *10 (M.D. Pa. July 19, 2023)).) Ashley has not identified a "'particular situation' and 'difficult choices concerning or a history of employees mishandling' the situation." (*Id.* (quoting *Forrest*, 930 F.3d at 106).) Instead, Ashley solely alleges generally that Officer Kosheba "was traveling around the County using the CET Team to engage in police use of force incidents." (*Id.* at 13–14 (quoting Doc. 50, ¶ 153).)

Ashley responds that the second amended complaint does provide a particular situation. (Doc. 55, p. 7.) He asserts that Officer Kosheba changed Township policy related to vehicular pursuits and that DA Chardo allowed him to do so despite the risks. (Doc. 50, ¶¶ 34, 37–39; Doc. 55, p. 7.) Ashley alleges that,

in so allowing, DA Chardo acted with deliberate indifference.  (Doc. 50, ¶¶ 34, 37–39; Doc. 55, p. 7.)  Ashley asserts that Officer Kosheba's policy decision led to deaths from vehicular pursuits and Ashley's injuries.  (Doc. 50, ¶ 39.)

Seemingly, Ashley argues that DA Chardo, by failing to supervise Officer Kosheba's alleged vehicular pursuit policy, led to Ashley's K-9 excessive force claim.  Ashley's claim is unrelated to vehicular pursuits.[3]  And Ashley presents no authority to suggest that he can bring a failure to supervise claim based upon an unrelated policy.

The court finds that Ashley does not specify what difficult situation DA Chardo knew that Officer Kosheba would confront.  Nor does he allege the difficult choices related to or the history of mishandling the particular excessive force situation at issue in this case.  Ashley has failed to point to a particular situation and difficult choices concerning or a history of employees mishandling excessive force situations.  Therefore, he fails to plead a failure to supervise theory.

### C. The court will dismiss Count V with prejudice.

The County argues that Count V should be dismissed with prejudice.  (Doc. 53, pp. 7, 12, 14.)  Ashley does not respond to this argument.  Therefore, the court

---

[3] Ashley does allege changes in use of force policy, but only addresses it when arguing that Kosheba had final policymaking authority.  (*See* Doc. 55, pp. 4–5.)  And nowhere in his brief does he address a particular situation or difficult choices concerning an excessive force situation.

deems him to have waived it.  Moreover, Ashley has twice had the opportunity to amend his complaint.  His second amended complaint still fails to plead the requirements of Count V.  The court concludes that to allow further amendment would be futile.  As a matter of law, Officer Kosheba was not a final policymaker.  Furthermore, despite repeatedly amending his complaint, Ashley has failed to point to any sufficient facts to raise a failure to supervise claim.  For these reasons, the court will dismiss Count V with prejudice.

## CONCLUSION

For the reasons described herein, the court finds that Ashley fails to plead Count V and will dismiss it with prejudice.  An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: April 1, 2024